Warren L. Kister et ux., Petitioners *v.* Commonwealth of Pennsylvania, Acting by and through the Pennsylvania Fish Commission, etc., Respondent.

Argued May 11, 1983, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*James A. Kudasik,* for petitioners.

*Dennis T. Guise,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, October 7, 1983:

Warren L. Kister and Janet O. Kister, his wife, have filed a petition for review of an order of the Pennsylvania Department of Community Affairs, Board of Property, dismissing for lack of jurisdiction, their petition in the nature of an Action to Quiet Title. We reverse the board's order and remand the record to the Board of Property for disposition of the petitioners' complaint on its merit.

A brief history of this cause is as follows: Charles B. Kister, the father of Warren O. Kister, acquired a farm property in Somerset County. In the year 1955 the Pennsylvania Fish Commission acting through the Attorney General of Pennsylvania, filed a petition in the Court of Common Pleas of Somerset County averring that it proposed "to construct a fish propagation dam and lake ... and for this purpose it is necessary that the petitioners acquire a portion of a tract of land belonging to Charles B. Kister." The tract

was described by metes and bounds and is recorded as containing 99.812 acres. The prayer of the petition was for the appointment of a jury of view, which being appointed, awarded Charles B. Kister damages for the take in the amount of $27,000. The dam and lake were constructed. In November, 1965, Charles B. Kister and Katie Landis Kister, his wife, the latter being Warren L. Kister's stepmother, executed and delivered to the petitioners a deed conveying five parcels of land seeming by their descriptions to contain a total of about one hundred and sixty acres. The following appears just after the description:

> EXCEPTING AND RESERVING from the above conveyances, 99.812 acres previously conveyed by the above Grantor to the Commonwealth of Pennsylvania for Lake Somerset by Deed dated the —— day of ——, 19—, and recorded in Deed Book Volume ——, page ——, according to draft attached hereto.

In fact, however, Charles B. Kister never conveyed the 99.812 acre tract to the Commonwealth.

In 1973 Warren L. Kister and Janet O. Kister entered into an oil and gas lease with an individual which lease included the oil and gas beneath the 99.812 acres which had been taken by the Fish Commission. This lease was subsequently assigned by the lessee to Amoco Production Company.

In 1979, after a discovery of gas in the neighborhood, the Fish Commission entered into an oil and gas lease for its lands, including the former Charles B. Kister tract, with the same Amoco Production Company.

The petitioners, in December, 1979, commenced their Action to Quiet Title in the Court of Common Pleas of Somerset County describing in their complaint the history we have just covered and alleging that the oil and gas lease executed by the Fish Com-

mission had placed a cloud on their title to the oil and gas underlying the 99.812 acres taken by the Fish Commission from their predecessor, Charles B. Kister. The relief sought was that the cloud on the plaintiffs' title to the oil and gas be removed by order of the court, and that the Commonwealth defendants be restrained from setting up a title to the oil and gas impeaching that of the plaintiffs.

The petitioners'. thesis is that the Fish Commission took from Charles B. Kister only his title to the surface and the right to surface support for its dam and lake; that it did not take the oil and gas beneath the surface. They depend for authority on such statements in the cases as:

> The city might [have taken a fee simple absolute] and perhaps a fair presumption would be that it had; but it was not obliged, nor in strictness was it authorized, to take more than was absolutely necessary for its purpose. The limit of the public right is the public necessity, and the residue, as it may be called, of the use of the land, remains unaffected in the owner. The extent of such residue depends on the nature of the public use. . . .

*Wilson v. Scranton City,* 141 Pa. 621, 630, 21 A. 779 (1891). *See also Philadelphia Felt Co.'s Appeal,* 293 Pa. 551, 143 A. 208 (1928); *Pennsylvania Mutual Life Insurance Co. v. Philadelphia,* 242 Pa. 47, 88 A. 904 (1913); *Commonwealth, Pennsylvania Game Commission,* 21 Pa. Commonwealth Ct. 30, 342 A.2d 824 (1975).

The court of common pleas dismissed the petitioners' complaint for lack of jurisdiction and the plaintiffs then filed it with the Board of Property. The Board of Property dismissed the claim, in the Board's words, because "this board sitting as a court in equity has no jurisdiction to determine the nature of the in-

terest taken by the Commonwealth of Pennsylvania through the Pennsylvania Fish Commission." This was error. Section 1207 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §337, provides that "[t]he Board of Property shall also have jurisdiction to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth." The only case cited by the Board of Property in support of its order, *Gardner v. Allegheny County,* 382 Pa. 88, 114 A.2d 491 (1955), is not pertinent. The Supreme Court there held that a court of equity has no jurisdiction to determine that repeated overflights of aircraft using a public airport constituted a taking of the properties of complaining neighbors and to award compensation for such taking. The petitioners in this case are asking the Board of Property not to determine whether or not the Commonwealth by the Fish Commission took property of Charles B. Kister or to award compensation for the taking; they are asking the Board of Property to perform only the function explicitly committed to it "to hear and determine cases involving the title to Commonwealth property or interest therein brought by persons who claim an interest in the title to lands . . . claimed by the Commonwealth."

Moreover, an Action to Quiet Title is not a proceeding in equity as the Board states but an action at law created by Pa. R.C.P. No. 1061 as a substitute for a number of statutory remedies formerly available to persons seeking to establish or to clear title to lands or interests therein.

Finally, we cite as directly contrary to the Board of Property's statement that a court of equity will not inquire into the matter of the amount of land or the type of interest taken or proposed to be taken in a

condemnation proceeding, the following: *Truitt v. Borough of Ambridge Water Authority,* 389 Pa. 429, 133 A.2d 797 (1957); *Winger v. Aires,* 371 Pa. 242, 89 A.2d 521 (1952). While these cases antedate the present Eminent Domain Code (which provides preliminary objection as the means for questioning the power of the condemnor to take) so also did the Fish Commission's appropriation of Charles B. Kister's property precede the Code.

The order of the Board of Property is reversed and the record remanded for disposition of the merits of the appellants' claim.

### ORDER

AND Now, this 7th day of October, 1983, the order of the Board of Property is reversed and the record remanded for further proceedings not inconsistent with the opinion herein. Jurisdiction is relinquished.